Peter Sgro and Catherine L. Sgro, Plaintiffs-Appellees, v. Nelson O. Howarth, Mayor, Ines Hoffman, et al., Commissioners and/or Local Board of Improvements and Dwight H. O'Keefe, Jr., as Commissioner of Public Health and Safety, George Rose, et al., as Building Inspectors, Defendants-Appellants. Herbert A. Elkin, et al., Petitioners-to-Intervene-Appellants.

Gen. No. 10,563.

Fourth District.

December 17, 1964.

1

Walter L. Oblinger, Corporation Counsel, for defendants-appellants, Roberts & Kepner (Maurice Kepner, of counsel), all of Springfield, for petitioners-appellants.

Olsen & Cantrill, of Springfield, for appellees.

SMITH, J.

Stripped of collateral issues this case involves two basic questions. The first is a summary judgment of the trial court directing the issuance of a permit to build a filling station on the property of the plaintiffs and "staying" or "enjoining" a consideration of zoning re-classification of the property by the zoning board of appeals and the city council of Springfield. The second concerns the refusal of the trial court to permit adjoining residential property owners to intervene in the case.

The four corners of Lincoln and Lawrence Avenue in Springfield were zoned commercial by the original zoning ordinance of 1924. They did not develop commercially, but remained residential together with adjoining property owned and occupied by the eleven—thirteen would-be intervening petitioners. The southwest corner of the intersection consisted of a four-family residence and a vacant lot. Plaintiffs acquired this property in September 1963, for $23,500, with knowledge that it was zoned commercial. In February 1964, they entered into an option agreement to sell to Shell Oil Company for $40,000. This option expired by its terms on May 23, 1964, and provided for the "construction and operation on the premises of an

automobile service station in accordance with Shell's plans and specifications."

On March 5, Shell filed its application for a building permit. On or about March 9, plans and specifications were approved by the building and trades inspectors of the city and a curb cut approved by the acting traffic engineer. On March 11, the city council passed a resolution recommending that the property be zoned residential and referred the matter to the zoning board of appeals for hearing on March 26. On March 13, plaintiffs demanded of the city the issuance of a building permit.

On March 17, the corporation counsel of the city advised plaintiffs that they were in no position to demand the building permit unless they were agents of Shell Oil Company. On March 19, Peter Sgro added his signature to the application for the building permit as agent or owner. On March 25, the instant suit for declaratory judgment was filed asking for a judgment directing the issuance of the building permit and requesting that any attempted reclassification by the city council or zoning board of appeals be "stayed" or "enjoined" pending the outcome of the litigation. The stay order was issued on March 25 without notice and without bond.

On April 6, the city officials moved to dissolve the stay order for the reason that courts may only restrain the enforcement of unauthorized ordinances and resolutions and not their passage; that the order was improperly issued without notice and without bond and, by amendment, asserted that the stay order erroneously purports to operate on the zoning board of appeals and its members and neither the board nor any member thereof are parties to this proceeding. On April 15, plaintiffs filed their motion for summary judgment with affidavits attached. On May 11, the city filed objections to the motion for summary judg-

4

ment alleging insufficient time to process the building permit. A motion to dismiss the complaint was filed on the same day asserting that plaintiffs had not exhausted their administrative remedies and that the alleged controversy is not a proper basis for declaratory relief. In the meantime, the adjoining property owners sought to intervene alleging their interest in the controversy, that they would be bound thereby without being parties to the suit and independently joined in adopting or asserting the same basic defenses as had the city. On May 11, the court heard at the same time all of the following matters: (1) Petitioners' petition to intervene; (2) defendants' motion to dissolve the injunction; (3) defendants' motion to strike the complaint; (4) plaintiffs' motion for summary judgment. At the conclusion of the hearing, the court denied defendants' motion to strike and granted the defendants leave to file their answer and objections to the motion for summary judgment. These were filed; no further hearing was held; and the court took all the remaining matters under advisement until May 18. On that date the court entered its summary judgment which denied all of defendants' motions and petitioners' petition, made the temporary injunction permanent as to plaintiffs' property, and ordered the building permit to issue. The various defendant city officials and the intervening petitioners appeal and filed their separate briefs.

The issues in this case do not involve the question whether the property in question should have been in the past reclassified or should now be reclassified. It has been zoned commercial for 40 years. The first and paramount issue is whether the city should have issued a permit for the construction of a filling station. The rights of the parties were crystallized on March 5, when the application for the permit was filed or at the latest on March 19, when the record

5

owner in fee joined in the application for the permit as required by Section 102.4 of the National Building Code. Phillips Petroleum Co. v. City of Park Ridge, 16 Ill App2d 555, 149 NE2d 344. It is here observed that this irregularity did not deter nor delay the approval of the plans and specifications by the building and trades inspectors of the city nor the authorization by the acting traffic engineer of a curb cut.

■ It seems clear from this record that the application for the building permit triggered the city council into the adoption of a resolution finding that the present zoning was unreasonable and arbitrary and that it should be zoned residential. The resolution directed the zoning board of appeals to proceed in due form to consider this purpose. While the resolution was effective as a directive to the zoning board of appeals to proceed to consider the matter, it is devoid of either legal or factual significance if the plaintiffs are otherwise entitled to the building permit. In Phillips Petroleum Co. v. City of Park Ridge, 16 Ill App2d 555, 149 NE2d 344, after the filing an application for a permit to build a filling station in conformity with the existing zoning ordinance and building code, the city, by resolution, directed that no such further permits be issued until the city could reevaluate the overall situation through the creation of a zoning commission. It was there held that the city was without authority to thus suspend its zoning ordinances, that the resolution was invalid and that it did not effect the rights of the property owner seeking the permit. It was there also stated that the only way a municipality can initiate a zoning ordinance or alter, modify or change an existing ordinance is to follow the procedure prescribed by the enabling statute. At the time of the application for the permit and the passage of the resolution by the City of Springfield, it is apparent that there was a long stretch of

road ahead of an effective modification of the then existing zoning ordinance. The March 11th resolution of the city council was wholly ineffective to change the then existing zoning nor is it an effective foundation upon which to build a refusal to issue the building permit.

 The municipal machinery moved with reasonable dispatch until the adoption of the March 11th resolution. Two agencies of the city had functioned and approved the application. It is patent from this record that the resolution to rezone reduced the remaining agencies of the city into a state of somnolence or obstructionism. The corporation counsel correctly found that the plaintiffs had no right to demand the issuance of the permit unless they were the agents of Shell or the owners. This inadvertence was corrected on March 19. The inspectors remained quiescent. The zoning board of appeals was moving and set its hearing for March 26. This suit was filed March 25. The defendants urge by way of defense that the fire prevention inspector "although diligent" had not had an opportunity to inspect the plans and specifications and that thereafter the stay order or injunction precluded any action on the permit and that thereafter the Department of Public Health and Safety had done nothing further with the permit. By their own assertions, the defendants answer any claim that this suit cannot stand because of plaintiffs' failure to pursue their administrative remedies. It is true that Section 49.37 of the City Code provides for an appeal to the zoning board of appeals from any "order, requirement, decision or determination by the building inspectors." By their own pleadings, defendants concede that no such order, requirement, decision or determination has been made. An administrative review available under the Code is from action not in-action. People ex rel. Skokie Town House

7

Builders, Inc. v. Village of Morton Grove, 16 Ill2d 183, 157 NE2d 33. The trial court did not err in denying defendants' relief on the grounds that administrative review was available.

■ ■ It is clear from Phillips Petroleum that a municipality cannot affirmatively suspend their zoning ordinances to the prejudice of a building permit applicant. It is equally clear from that case that there is no basis in the statute for emergency or peremptory action on the part of the council. It was there urged that there might or could have existed conditions which would require prompt rezoning on the part of the city council to protect the rights and interests of the property owners. The court answered this contention by saying that neither the court nor the council can read into the enabling statute a nonexistent provision. The resolution of the City of Springfield was an abortive attempt on its part to exercise a non-existent power as applied to these plaintiffs. In Chicago Title & Trust Co. v. Village of Palatine, 22 Ill App2d 264, 160 NE2d 697, it was held error to mandamus a city to issue a building permit for the construction of a filling station where a comprehensive zoning ordinance prohibiting such use was on file at the time of the application; public hearings had been held, and such ordinance was in fact adopted 24 days after the application. It was there pointed out that it was illogical to nullify the whole purpose of the zoning statute by a "race to the wire" on the part of the applicants. It seems to us equally illogical and without statutory support for a council to nullify its own ordinances by the simple expediency of referring a given property to the zoning board of appeals for re-classification after an application for a building permit had been filed for a then permissive use. Such a holding relegates every zoning classification to an ambulatory status, its final integrity de-

pendent upon the then whims of the city council as to the particular property. However well intentioned the resolution of the city council may have been, it is a nullity so far as it effects the rights of these plaintiffs to a building permit. It appears to be now well established in this state that where there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance such party has a vested property right and he may complete the construction and use of the premises for the purposes originally authorized irrespective of subsequent zoning or a change in zoning classification. People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove, 16 Ill2d 183, 157 NE2d 33; Fifteen Fifty North State Bldg. Corp. v. City of Chicago, 15 Ill2d 408, 155 NE2d 97; Deer Park Civic Ass'n v. City of Chicago, 347 Ill App 346, 106 NE2d 823. This seems to be the general rule with the authorities varying on the degree of action required to ripen into a vested right. 8 McQuillin, Municipal Corporations 272 (3rd Ed). In Morton Grove, the applicant paid $26,000 for the property, had procured plans, specifications and plot plans, and had paid the fees required for the permit. The Supreme Court held these constituted a substantial change of position within the rule—and so it is here. The sellers had the property appraised for $21,000. Plaintiffs paid $23,000–$23,500 for the property, paid the fees required by the city and procured and filed detailed plans and specifications with the city with the application for permit. These things took place after plaintiffs had checked the city ordinances, with knowledge that in 1961, the corporation counsel had advised the city that this property was zoned C Commercial and with knowledge that the zoning classification had remained static for 40 years without activity on the part

9

of either the city or the adjoining property owners as to its status. Under these circumstances, we are of the opinion that the rights of the plaintiffs became vested within the rule announced in Morton Grove.

The trial court issued a temporary injunction without notice and without bond staying or enjoining the city officials, the zoning board of appeals and all persons acting under the authority of the mayor or city commissioners from proceeding to reclassify the property in question. In our judgment the trial court erred in originally issuing the temporary injunction or stay order, in denying the motion to dissolve it, and in finally making it permanent. The right of the plaintiffs to the issuance of the permit for the construction of a Shell service station were dependent upon the facts existing at the time of the application or at the time of the amended application. If, as Phillips holds, the city was powerless to suspend its ordinances for the purpose of an overall study of zoning reclassification after an application for permit is filed, it seems undebatable that it may not do piecemeal what it cannot do in toto. As observed in Phillips, our legislature has not included in its enabling statute a provision for a temporary, an emergency, or an interim reclassification or rezoning ordinance which precludes the exercise of vested rights. Contrariwise, the determination of the proper zoning classification of the four corners of this intersection for the future is a recognized legislative function. It is beyond the power of the court to permanently bring to a halt these legislative functions. It is one thing to say that the legislative branch may not destroy the vested rights of the plaintiffs as it relates to the instant permit; it is quite another thing to say that it may not exercise its statutory powers as to the future should the specific use set forth in the application

10

for the permit be abandoned, discontinued, or for any reason not utilized. Plaintiffs' rights have vested as to the specific use stated in their application for permit; they have no vested right in the permanently continued present zoning classification.

■ ■ Without belaboring the points we further observe that, the stay order was issued without notice and without bond, it stayed the action of the zoning board of appeals and its members who were not parties to the proceedings, and no irreparable harm would have been suffered by the plaintiffs had the stay order been denied. Indeed as we have seen, the vested rights of the plaintiffs to the issuance of the permit would not have been harmed at all. It seems clear to us that the injunction or stay order was and is a nullity and it is accordingly reversed, set aside and for naught held. Some eleven–thirteen adjoining property owners appealed from the order of the circuit court denying them leave to intervene and filed their separate brief. It is abundantly clear that their right to intervene exists in a suit to declare a zoning ordinance unconstitutional, East Maine Tp. Community Ass'n v. Pioneer Trust & Sav. Bank, 15 Ill App2d 250, 145 NE2d 777; Bredberg v. City of Wheaton, 24 Ill2d 612, 182 NE2d 742; or in a declaratory judgment suit to rezone their property, Oakton-Crawford Corp. v. Village of Skokie, 28 Ill App2d 507, 171 NE 2d 814. These situations do not exist here. The sole primary issue here is the duty of the city to issue a permit under a then existing and long existing zoning ordinance. Every defense sought to be raised by petitioners was raised by the city. Their presence in the suit could not have affected the right of the plaintiffs to the issuance of the permit. Since, as we have seen, neither the interveners nor the city had the authority to withhold or cause the withholding of the

permit, the intervention of the petitioners in the suit was of no consequence.

Since we have held the stay order or injunction a nullity, it is now an idle gesture to determine whether or not interveners had a right to be heard on that issue in the trial court. It is moot. Without intervention, the petitioners have obtained here what they might have obtained by intervention there i. e., the dissolution of the stay order or injunction.

It is further urged that summary judgment was inappropriate as there was a genuine issue of a material fact as to whether the city had had a reasonable time to process the application for permit. The affidavit states that "the fire prevention inspector, although diligent, had not had an opportunity to inspect the plans and specifications up to March 25" and that they had "done nothing with the building permit in accordance with the injunction." The injunction was entered on March 25. The final decree was entered May 18. The stay order as abstracted recites the resolution of the city directing the zoning board of appeals to hold a hearing on rezoning, that its right to do so is one of the issues in the case and that the "rights of the plaintiffs herein will be unduly prejudiced if an order staying the proceedings is not issued immediately, etc." How this order could possibly be construed to relate to the processing of the application for permit escapes us. It is patent that had the permit been processed and issued, this suit would have become moot. Had the permit been refused and order entered refusing it, an administrative review of the order was then appropriate under the Code. We think the issue of a reasonable time to process the application for permit is not a "genuine issue of a material fact" precluding summary judgment.

Accordingly, the order of the court issuing the temporary injunction and making it permanent is here-

12

by reversed. In all other respects, the summary judgment is hereby affirmed.

Affirmed in part, reversed in part.

DOVE and SPIVEY, JJ., concur.