Joseph P. Naumovich, Administrator of the Estate of Josephine Naumovich, Deceased, and Paul F. Wanless, Plaintiffs-Appellees, v. Nelson O. Howarth, Mayor, Ines Hoffman, et al., Commissioners and/or as Local Board of Improvement, and Dwight H. O'Keefe, Jr., as Commissioner of Public Health and Safety, George Rose, et al., as Building Inspectors, Defendants-Appellants.

Gen. No. 10,884.

Fourth District.

February 15, 1968.

Walter L. Oblinger, Corporation Counsel, of Springfield (W. J. Simhauser, of counsel), for appellants.

Presney and Casper, of Springfield, for appellees.

TRAPP, J.

The defendants, who represent the City of Springfield in the official capacity of Commissioners and as building inspectors, appeal from a decree of the Circuit Court directing the issuance of a building permit authorizing the construction of a gasoline service station upon property originally owned by one Josephine Naumovich, and holding void an ordinance passed subsequent to the application for the building permit, which ordinance reclassified the

property from "E," Heavy Industrial Use District to "A," Residence Use District.

The defendants are referred to herein as the City. Plaintiffs are Joseph P. Naumovich as administrator of the estate of Josephine Naumovich, the original owner, and Paul F. Wanless, who had an option to purchase at the time of the application for the building permit.

The original plaintiff, Josephine Naumovich, owned a tract of ground on the southwest corner of Sangamon Avenue and 19th Street in the City of Springfield, having a frontage of about 136 feet on Sangamon Avenue and about 150 feet on 19th Street.

On August 10, 1964, Josephine Naumovich gave an option to purchase the above described property for $28,200 to James McClernon, who assigned the option to intervening plaintiff, Paul F. Wanless. The option, which required the option seller to obtain commercial zoning, was later extended to August 10, 1965.

On October 27, 1964, a City building inspector, having his attention called to the industrial use classification by an employee of the plaintiff, Wanless, wrote an inquiry to the supervisor of inspectors requesting advice as to action to be taken in case a building permit should be applied for. On November 5, 1964, Mr. Wanless examined the zoning maps and ascertained from the City Clerk that the property had been classified as "E," Heavy Industrial Use District by the original zoning ordinance of the City in 1924, along with other property adjoining Sangamon Avenue from 15th Street east to the eastern city limits, and had not been changed since. Between the original enactment and the transaction with Mr. Wanless, Josephine Naumovich, apparently believing that the classification was "A," Residential, applied for and obtained a variation to use the property as a frozen custard shop.

The City, subsequent to the building inspector's inquiry as to action to be taken, and apparently as a result there-

of, did, on November 10, 1964, pass a resolution referring the question of reclassification of all property on Sangamon Avenue between 15th Street and the east city limits, including the property in question, to the Zoning Board of Appeals for public hearing and recommendation. The City resolution recommended reclassification to "A," Residential Use District, and directed that no building permit other than a residential permit should be issued by the Building Department of the City of Springfield.

On November 17, 1964, Mr. Wanless submitted to the City an application for a permit to erect a gasoline service station upon the property in question together with appropriate plans, and paid the required fee. The application for permit was refused upon the authority of the resolution aforesaid.

As a result of its public hearing, the Zoning Board of Appeals recommended that all of the property on Sangamon Avenue from 15th Street east to the east city boundary be reclassified to "A," Residential Use District, except the subject property, and, as to it, the Board recommended that it not be rezoned to "A," Residential Use District.

On December 15, 1964, the City enacted an ordinance, contrary to the recommendation of the Zoning Board of Appeals, and reclassified the subject property to "A," Residential Use District.

Josephine Naumovich filed a suit for declaratory judgment and an injunction on January 18, 1965, and a default decree was entered March 9, 1965. The decree was vacated on motion of the City on June 8, 1965.

On June 2, 1965, Mr. Wanless granted an option for a five-year lease to Humble Oil and Refining Company, which company exercised the option on July 28, 1965. On August 10, 1965, Mr. Wanless exercised the option to purchase the Naumovich property, stating that payment

136

would be made when merchantable title is conveyed, and ". . . when your obligation '2. that commercial zoning be secured thereby allowing full use of the above property for commercial use'; has been accomplished as agreed in said option agreement."

On August 26, 1965, Mr. Wanless obtained leave to intervene as a plaintiff. A decree was obtained May 20, 1966, finding the ordinance of December 15, 1964, rezoning the plaintiff's property, to be arbitrary, unreasonable, unconstitutional and void as applied to plaintiff's property and enjoining its enforcement. The decree also found that the resolution of November 10, 1964, forbidding the issuance of a building permit, was void.

Plaintiffs contend that the City could not by the resolution of November 10, 1964, suspend the zoning ordinance then in effect, and also contend that there were sufficient acts in reliance upon the existing zoning to give a vested right in the issuance of a building permit.

As to the first contention we agree. Sgro v. Howarth, 54 Ill App2d 1, 203 NE2d 173.

The acts of plaintiffs in reliance upon the existing zoning are stated by plaintiffs. On November 17, 1964, Mr. Wanless applied for a building permit, submitted the required plans and specifications and paid the filing fee of $30. He expended $50 for a plot plan to be submitted with the application. He stated that immediately prior to filing the application he had about one hundred separate negotiations and items of business concerning the possibility of a service station on the location.

The default decree in favor of the plaintiff, Josephine Naumovich, was entered March 9, 1965. Mr. Wanless testified that thereafter he conducted considerable negotiations with major oil companies, and obtained a commitment for a $90,000 loan from Continental Assurance Company. Mr. Wanless testified to expenses in this period

of $200 in telephone calls, $400 in office help, and $325 for an additional three dimensional plot plan by Reynolds and Walschleger, in addition to his own time.

If substantial change of position in reliance on the zoning is required to sustain the plaintiff's position, we do not think the decree can be sustained. This case differs from Sgro v. Howarth, 54 Ill App2d 1, 203 NE2d 173. In that case the plaintiff paid $23,000 relying on Commercial Zoning of the lot, and entered into an option to sell the property to an oil company for $40,000 prior to applying for the building permit, and prior to the City's attempt to rezone the property.

Here, at all times, the agreements were conditional upon suitable zoning. There is no showing of large expenditures or unconditional commitments. Similar expenditures were involved in the case of People ex rel. Nat. Bank v. Cook County, 56 Ill App2d 436, 206 NE2d 441.

Considerable difficulty is experienced in reconciling the rules announced in the authorities that, (a) rights are fixed at the time the application for a building permit is made; (b) no resolution suspending existing zoning ordinances is effective; (c) an applicant has no complaint regarding retroactive zoning unless he experienced a substantial change of position relying on existing zoning, and (d) where the City's wrongful act prevents one from acquiring a vested right, the City cannot take advantage of a situation which it caused. See Sgro v. Howarth, 54 Ill App2d 1, 203 NE2d 173; Chicago Title & Trust Co. v. Palatine, 22 Ill App2d 264, 160 NE2d 697; and Deer Park Civic Ass'n v. City of Chicago, 347 Ill App 346, 106 NE2d 823.

The opinion in Sgro v. Howarth, 54 Ill App2d 1, 203 NE2d 173, distinguishes Chicago Title & Trust Co. v. Palatine, 22 Ill App2d 264, 160 NE2d 697, on the ground that in the Palatine case there was a comprehensive zoning ordinance on file and under consideration at the time

of the application for a permit. In Phillips Petroleum Co. v. City of Park Ridge, 16 Ill App2d 555, 149 NE2d 344, the change in zoning ordinance was not adopted until eight months after the building permit was applied for, and six months after the petition for mandamus. It also appears that the applicant purchased the property outright, relying upon commercial zoning. The Palatine case is based in part upon the fact that the City acted within a reasonable time. In Deer Park Civic Ass'n v. City of Chicago, 347 Ill App 346, 106 NE2d 823, there was unquestionably a substantial change of position to the possible extent of $660,785.21.

While the decided cases state that the rights of the parties are fixed at the time of the application for the building permit, that a municipality cannot suspend the operation of the existing law, and that the city may not take advantage of its own acts to prevent the acquisition of a vested right, so that no actual change of position is necessary to enforce the right to the building permit, nevertheless, the opposite conclusion is reached by logically applying the principles that no one has a vested right in the continuance of a law and that the ordinance applicable at the time of the decision governs. Phillips Petroleum Co. v. City of Park Ridge, 16 Ill App2d 555 on 565, 149 NE2d 344.

It, therefore, appears that the principles are made workable by inquiry into such factors as, (1) a substantial change of position before an orderly change in the law, (2) a notice of likelihood of change in the law prior to change in position of the applicant, (3) the regularity of the proceeding of the municipality to make the change, and (4) the promptness with which the municipality takes action.

We find no case which holds that the rights of the parties are frozen at the time of application if the party

has not theretofore changed his position relying on existing law.

Here the change in position prior to the passage of the December 15, 1964, ordinance was not substantial under the authorities.

We are confronted with an additional problem in this case. The decree recites that it is based upon evidence heard in the case, that the plaintiff Naumovich would be deprived of the difference between $8,250, residential value, and $28,000 commercial value, and the plaintiff, Wanless, would be deprived of the advantages of a service station lease which it finds is the highest and best use of the property. There are other findings that there is no detriment to the balance of the neighborhood because of a shopping center, proposed immediately across the street, because of the heavily travelled street and commercial establishments in the area. There is a finding that the ordinance deprives the plaintiff of property without due process of law. The court holds the ordinance reclassifying the property unconstitutional and void on the ground that the ordinance itself is unreasonable.

The defendants do not attack these findings in their appeal. Plaintiffs do not argue the constitutionality of the ordinance as an issue upon appeal. Our decision that the change of position based upon the belief in the availability of the site for a service station is insufficient to confer a vested right has no bearing upon the constitutionality of the ordinance itself.

We are unable to determine whether the court would have entered the decree if it had determined that the change of position was not substantial, as we have here held.

It is, therefore, necessary to reverse and remand with directions to the court to determine whether the amended ordinance as applied to this property is unreasonable and void, independent of any reliance by the plaintiff on the

existing state of the law with respect to the zoning of the property.

Reversed and remanded.

SMITH, P. J. and CRAVEN, J., concur.